May it please the Court, Counsel, Jonathan Rodmacher on behalf of the OSAA, the Oregon School Activities Association, which purchased an insurance policy from National Union, relatively high premium, and has the right to enforce the provisions of that insurance policy. Of course... They do too, don't they? I'm sorry? They have the right to enforce the terms too. I don't know, Your Honor, if technically an insurance company enforces the terms. They certainly didn't bring this action. They have a right to insist on some provisions being applied. And, of course, insurance contracts, unlike most contracts, don't follow all the rules of the literal language under Oregon law. Let's talk about when the contract came to fruition or arose. This is a claims-made policy, is it not? It is a policy that if you look at the notice provisions and when coverage applies, it's what insurance companies call claims-made policy. Okay. And as I understand it, claims-made policy, it doesn't come into being until notice of the claim is given. That's the big difference between a claims-made and an occurrence policy. I mean, I guess the policy certainly exists. It provides rights and remedies even if no claim is ever made. But in applying the provision... Well, there's no obligation to pay that may arise on the part of the insurance company until it gets noticed. Right, certainly. Okay. I'm not sure that would be true or different of any other policy. Okay. So the question I think that we're wrestling with is if it is a claims-made policy, then when was notice given and was that notice within the terms of the notice provisions of the policy? Certainly notice was not given within the time period set out in the policy. If that's the case, then isn't that the beginning and the end of the inquiry? The contract to pay the insurance never arose on the part of the insurer and the district court properly granted summary judgment. It would be, except I think Oregon law pretty clearly says that an insurance policy that has a notice provision, even if it says it's a condition precedence, no matter what the language used is, Lush, the Court said clearly in relying upon Bailey a couple decades earlier, that... But Lush was an occurrence policy. Well, Your Honor, I... And there is a difference. You'll struggle to find an insurance policy that says on page 1, this is an occurrence policy, this is a claims-made, of course. But do you agree Lush was an occurrence policy? The terms that are, yes, because under the terms of notice that are set forth in that policy, it's what insurers call an occurrence policy. All right. And if you agree, then, that that's an occurrence policy, is there any Oregon case that applies directly to a claims-made policy? I think that the Carl case, Carl v. Oregon Auto Insurance Company, 1996 case, is one that does. Now, I... Now, it isn't really a claims-made policy case, is it? Well, Your Honor... I mean, I looked very carefully at Carl so that I could make sure. In fact, I looked at Halsey, I looked at Griffith, I looked at Carl, I looked at Federated Services, and then I also looked at Herman. I couldn't find any of those cases to be exactly the kind of a policy which we have. Well, that's true. And so, therefore, if we don't have a policy that's directly appropriated or directly spoken to by the Oregon court, then I guess I'm trying to figure out why I should not apply Ninth Circuit law, which is Burns. Your Honor, I think the obligation still would be to look to what the Oregon Supreme Court has done. Well, but Burns was pretty straight. It said, the California Supreme Court has not decided whether the Notice Prejudice Rule applies to claims-made policies in California. And because it hasn't, we are deciding as a Ninth Circuit in Burns that, for two reasons, the Second Circuit should have said it does not apply to claims-made policies, which is Ninth Circuit law. So why don't I just apply Ninth Circuit law? Well, Your Honor, I think the Ninth Circuit was deciding what California law was. Well, how is it any different than Oregon law? Well, it was resolving a split between California appellate courts and deciding what the California Supreme Court would say to try and resolve that split. That's not what we've got under the Oregon case. This sounds to me like brown cow, white cow distinction. They're still cows. I mean, the problem was it wasn't resolved under California law. The problem is it's not resolved under Oregon law. We have a Ninth Circuit case that says if it's a claims-made policy, you lose. Why shouldn't we follow our own authority? I guess, respectfully, Your Honor, I think that the Burns case says California law is distinguishing between occurrence and claims-made policies. And Oregon law doesn't follow that. That's fine. California's structure is different. Let me ask you to focus then on Oregon law. I mean, everybody understands the problem, which is that there's not a controlling Oregon case that speaks specifically to this. And you've tried to argue that Oregon law generally, unlike the law in other states, requires a showing of prejudice. But then I run into Herman, which isn't this case either. But it seems to be a pretty clear indication that the Oregon courts don't say that prejudice has to be shown in every case, because in that case, they didn't require a showing of prejudice, despite the series of decisions that you waive. Well, of course, Herman is a twofold sort of an issue that's different than ours. One is it's really kind of a policy statute limitation. Second, it's a policy provision that's required by the state code with regard to insurance, that fire policies have to have this kind of provision. So I think it's an easy solution to say, of course, the court's going to conclude that the legislature has dictated this is part of the law. It's not a legislation. Well, then the legislature can set the law. I mean, what I'm saying is that you're trying to impose or reason to us that there's an overwhelming principle in Oregon law that requires the showing of prejudice for any of these policy details or specific notice requirements to kick in. And we have, at least in Herman, whether it's through the enactment of the legislature or the decision of the courts, a decision that says, no, in this kind of policy, that simply doesn't apply. It's trumped by this other rule. And the question here is, well, is that rule that you're trying to draw from the Oregon decisions trumped by the fact that this is a different kind of policy? I think conflating or mixing statute of limitations analysis with notice prejudice analysis doesn't do what the Oregon courts have done. Statute of limitations is when you've got to sue, when you've got to actually bring a claim against the party. And I don't know that any court has ever said that. Well, they are related, are they not? In the context of a claims-made policy, the obligation of the insurer never arises unless the claim is timely made. And if the claim is not timely made, then the obligation of the insurer never arises and the insured is barred from seeking recovery under the claim. That operates exactly like a statute of limitation in preventing a claimant from proceeding with an otherwise, perhaps, viable claim. Your Honor, I agree that reading a claims-made policy, that's exactly what happens. But reading an occurrence policy, that's exactly what happens. It says, if you don't give timely notice, it's a conditioned precedent, there's no coverage. And the courts that have addressed this say that. That really isn't what it says. The coverage happens in the occurrence policy. There is coverage. We're just arguing about whether, even though there is coverage, that your client has not given timely notice, so they ought to get out because of prejudice. And so we look about prejudice. But in the claims-made, we're establishing coverage in the first place. That's the worry that I have. And my worry, frankly, taking your side in Idaho a couple of times, I suggested to myself, well, let's find out what the law is. And my worry was, citing you all the cases now, never finding a claims-made policy decision under Oregon, never finding one where I could really say, that's what Oregon says, then I have Ninth Circuit policy, which is pretty straight. We got some distinction between these two types of policies. That distinction is critical. Therefore, you've got a precedent you have to follow. I think that the Oregon Supreme Court's analysis of the cases, the notice prejudice cases, are similar to Kansas, which is Kansas Supreme Court, which rejected this exact argument by the same insurance company that said, yeah, our prior cases have adopted a notice prejudice on claims-made on occurrence policies. National Union says, treat them differently. And the Kansas Supreme Court says, no, of course not. That's not what you're going to do here. And I think that rationale of the Court, noticing the trend toward that, consistent with the repeated claims. Well, trend, trend based on one State so far, it appears. Well, Judge, what Kansas pointed out was that National Union had said there's a trend in getting rid of notice prejudice. And the Court said, no, we beg your pardon, but in fact, it's the opposite. Is there any other jurisdiction, any other State Supreme Court, that has rendered the decision that you're trying to? So there may not be a trend in favor of the insurance carrier, but it's hard to find a trend to the contrary based on one State. I don't think there's a heavy trend either way. I'll simply point out, I'm not trying to line up the slashes for Your Honors. I really was trying to say that National Union itself has made the same argument. And the Kansas Supreme Court has said, no. Okay. And has said that. Do you want to say sometimes that you're almost out for rebuttal? Five seconds. I'll give you a little more than five seconds. Let's hear what National Union has to say. Good morning, Your Honors. Don Burforth representing National Union. May it please the Court. Counsel, I think you've made most of my arguments for me, but. We can make his for you. Right. Don't get too comfortable. That's right. But I think what's important here is the fact that if you look at the language of the policy, and I actually handed up three illustrations of the policy where it clearly points out both on the declaration sheet, page one of the policy, and under the notice precedent or under the notice conditions. And if you look specifically, and I think it was Judge Smith that pointed this out, is that it says as a condition precedent to the obligations of the insurer under this policy, give written notice to the insurer of any claim made against an insured as soon as practicable. But then it goes on to say and either any time during the policy period or within 30 days after that. I think the court in the Eighth Circuit Court in Lexington versus St. Louis University summed it up well because they said that the notice requirement in a claims made and reported policy is not part of the duty to cooperate like it is in an occurrence policy where it just says as soon as practicable. But it is the notice requirement actually defines the limits of the insurer's obligations. So that is what is here in this case with a claims made and reported policy. It actually defines the limits of the insurer's obligation. As the Burns case points out, as every jurisdiction except Kansas, and I question the applicability of the Kansas cases, but every other jurisdiction that has faced this issue has made the distinction between an occurrence policy and a claims made and reported policy. And as the Washington court pointed out in the Safeco versus Gannon case and also the First Circuit pointed out in the Deluglio case, both of which are cited in our papers, a claims made policy is designed in such a way so that the insurer can determine at the end of the policy period or this 30-day discovery period what its liabilities are going to be under the policy. That's a different function or a different role than is present for a occurrence policy. I think what you just said is, let me see if I can restate it, that essentially it goes to the underwriting risk that the insurer decides to take, and that drives the price of these policies, which presumably are cheaper than occurrence policies. That is, Your Honor, the argument that's been made. That was the argument that was pointed out by the Washington Supreme Court. That was the argument pointed out by the First Circuit. In fact, almost every court that has addressed this issue has alluded to that fact in one form or another. That, in fact, is what we said in Burns. Let me ask you a question. Is there any place in Lush that it really says it's an occurrence policy? Yes, Your Honor. I believe in, if you may, if I may. Because, of course, their argument is that it is not necessarily an occurrence policy and it applies to all policies. In fact, the, it talks about an occurrence of an accident on page 596 of the policy under the, using the Oregon numbers. It also talks about the fact what, it was an automobile policy, which is an occurrence policy. It's not a claims made and reported policy. And I think one of the, one of you pointed out with the Herman case, while it's not exactly on point in terms of it was a suit limitation clause, it pointed out it actually gave the same analysis. And the Court said that prejudice was not necessary because the purpose of the suit limitation was to allow an insurer to fix its present and future liabilities. That's almost the exact same language that all of the courts in other jurisdictions have used with regard to a claims made and reported policy. Let me explore that for a minute. Because in this case, it may be the happenstance, but National Union issued policies in successive years. So there was a current insurance policy in force at the time the claim was made to National Union. The problem was that the claim was made to the insured in the prior policy year. And even though the insured gave notice, I guess, through the agency to the carrier, because of the delay, it winds up falling between the gaps because it doesn't qualify as a claims made for the succeeding policy year because the insured had notice. I'm not saying there's any ill intent, but there's a touch of gotcha there in terms of the coverage that otherwise would have existed and coverage that was paid for that winds up being forfeited because of late notice. If you put this in the occurrence policy context, at least in Oregon, that wouldn't work. And I'm not sure I understand the logical reason as to why they should be treated differently. Your Honor, again, as pointed out, the claims made and reported is to allow the insurer to make a determination as to their risk at the end of the policy period. As to their exposure. It doesn't really change the underwriting risk, does it? Because unless you include as a factor the underwriting risk, you're going to save some money because a few insurers are going to fall within the gap and they're going to blow their notice period and as a result lose the game of gotcha. I don't think it's falling through the gap. I think other courts have addressed this. I think the First Circuit or the Eighth Circuit, I'm sure, of the two cases that I cited, actually did address this issue and said, that may be true, but we have to enforce the contract as it is. They're in, and a claim, again. See, that tiptoes away from the principle we heard articulated, certainly advocated by the insured, and there is some support for it in Oregon cases that say, you know, we're not necessarily going to be bound to enforcing the contract as it is written if that doesn't seem appropriate in the circumstances. And if the circumstances is the same carrier in back-to-back years, it gets a little trickier. If you have different carriers, at least they can sit there and point to the other. But if it's the same carrier, same insured, paying the premium both years, if you take this as a two-year unit, there's no question, but they fall within the period of time they're insured by national union. So it's a little harder for me to understand exactly why it is that this policy is going to flounder if for some reason the claim is allowed to come in a little bit late and there's no prejudice as a result. Each policy has to be treated separately. You can't make a distinction. Because they chose to purchase two policies one after the other, you can't treat the language of the policy and the rules of construction of that policy and what's required by that policy differently, whether it is a policy in the first year by national union and the second year by chub. So if they had one two-year policy, they'd be okay, but because they have two one-year policies, they're not? I don't think I'm not an expert on the underwriting of this particular policy, but I don't think you can get a two-year claims made in reported policy. I think they're all only one year. But if you were correct, if it was a two-year policy, if the policy period said two years and you followed the requirements of that policy, that is that you had to report it within the policy period, then based on the law and in other jurisdictions, you'd be able to they would have made the claim during the correct policy period. But that's not the case here. They purchased a one-year policy. They happened to purchase the second year from the same carrier, but it should make, in terms of construction of the policy and construction of the insurance contract, it should make no difference whether, again, as it was whether the two years were purchased from the same carriers or separate carriers. The problem is that we don't know what the impact is on the underwriting assessment of the risk as between the two years, do we? I'm not sure what you mean by the impact. In other words, there's nothing in the record that tells us how the insurance company decided to price the premium for the second policy and whether the underwriting assessment may have been influenced by the fact that there was no claim made during the issuance of the policy for the first year. That's correct. None of that information is in the record. What the case law says is that that is the purpose of a claims-made-and-reported policy and that there is an impact on the writing that the claims-made-and-reported policy is treated differently in the underwriting process than an occurrence-based policy. But here we have no specific information in the record as to what was discussed during the underwriting or what was taken into consideration during the underwriting of this specific policy. Go ahead. I think that if I understood where Judge Clifton was going, he's raised an interesting question. It's hard to imagine what changed where the policies are successive and the parties continue to do business. Again, we have to look at the policies themselves. I don't think it's appropriate for a court to try to look at extrinsic evidence as to what may have been taken place during the underwriting process. It's really a question of law, whether or not a claims-made-and-reported policy requires prejudice. Was there ever anything, any argument made in this record at all, at any stage, about what the School Activities Association was bargaining to get? I mean, what we're really talking about here is these policies look pretty good unless one can talk about, hey, it was misrepresented to us what we were getting. Your Honor, my time is over. May I go ahead and answer your question? No, there's no evidence here, and it was never brought up on summary judgment, that there was anything, any extrinsic evidence, if you will, or discussions during this process about what the parties were getting other than what the policies were. Because it seems a little uneasy to me that the Oregon Schools Activity Association would understand claims made from occurrence as an association. So they were probably bargaining for insurance, and all of this is just something that came up. And so I wondered. I looked all over. I couldn't find anything in the record. There's nothing in the record. Obviously, as I think Tom pointed out, they went through a broker. Presumably, the broker knows his job or her job and knows what they're purchasing. Okay. Thank you, Your Honor. Thank you very much. We'll give you a minute on rebuttal. Thank you. I'll add two short points. One is there's nothing in the summary judgment record talking about underwriting risk at all. If we're talking about this insurance company making decisions or an insurer making decisions, this factual record has nothing about underwriting decisions. You both cross-moved for summary judgment. You're not suggesting that there are contested issues of material fact that require us to overwrite. No, I think that there was nothing in the record to allow any finding about underwriting, that that was not an issue. And I don't think you can say, well, this case has found there's an underwriting risk difference in this particular case. Well, the cases, I think the cases do. I know we talked about it in Burns, did we not, do address the practical rationale for treating the policies differently because the underwriting risk is different? I don't know if Burns, the factual record there had an underwriting issue presented to the trial. But I mean, we've got language in Burns that addressed that, addresses the underwriting risk, do we not? But I think, Your Honor, yes. The answer is yes. But I think that that was before that court, factually, and it's not here. The second issue is I think Burns clearly even concluded that. This Court said we believe the California Supreme Court would reach the same conclusion that the district court had had, clearly focusing on what California courts had done with insurance. And all the Oregon cases cited apply a notice prejudice rule, whether it's a non-cooperation, whether it's breach of the duty to consult about settling, or whether it's late notice. So you're really telling me that I needed to have in Oregon two district courts and the state court looking at this differently in order for Burns to apply? No, Judge. I say that Burns would – I don't think Burns is setting a substantive law of Ninth Circuit law. It's specifically saying California courts have done this. California Supreme Court would do this if it was asked. Well, and gives reason why, in those kind of situations, the Ninth Circuit believes this is the appropriate action to take. Well, Judge, I guess I – this Court seemed to be making that conclusion based upon the cases it reviewed from California. But the cases were in Equipo's counsel. Yeah. I don't see how you – Two lower appellate courts making different decisions. Correct. And then Burns' panel concludes California Supreme Court would go with the claims made argument here. So why shouldn't we just follow Burns? Because I think it's specifically looking at how California courts have dealt with this kind of notice prejudice question. And Oregon courts in similar positions have always found you have to show – With regard to occurrence policy. They haven't set occurrence policies. They've not limited their decisions. Okay. I think we understand your argument. Thank you, both counsel. The case just argued is submitted for decision. We will now hear argument in Valdino v. Mukasey.
judges: Tallman, Clifton, Smith